IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID KIPP,**<br>      **Plaintiff,**<br><br>           v<br>**ALLEGHENY COUNTY, ALLEGHENY COUNTY BUREAU OF CORRECTIONS, ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC., CORRECTIONS OFFICER ARII L. METZ** *individually and in his official capacity as a correctional officer,* **CORRECTIONS OFFICER TIMOTHY MILLER** *individually and in his official capacity as a correctional officer,* **CORRECTIONS OFFICER MARCIA L. WILLIAMS** *individually and in her official capacity as a correctional officer,* **RAMON C. RUSTIN** *individually and in his official capacity as warden of the Allegheny County Jail* **and DANA PHILLIPS** *individually and in her official capacity as President and chief operating officer of Allegheny Correctional health Services, Inc.*<br>      **Defendants.** | )<br>)<br>)<br>)    2:11-cv-1553<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Now pending before the Court is the MOTION TO DISMISS (Document No. 22) filed by Allegheny County (the "County"), Allegheny County Bureau of Corrections and Warden Ramon C. Rustin ("Rustin"), with brief in support. Plaintiff David Kipp ("Kipp") filed a brief in opposition and the motion is ripe for disposition.

Factual and Procedural Background

This case involves alleged mistreatment by corrections officers at the Allegheny County Jail after Kipp was arrested and held as a pretrial detainee[1] on October 12-13, 2010. As set forth in the Amended Complaint, after being taken to a jail cell Kipp repeatedly asked for his prescription medication by using the call button and intercom in his cell. A corrections officer responded by stating that Kipp would not get his medication and would be hit in the face for

---

[1] The parties recognize that as a pretrial detainee, Kipp's constitutional rights are analyzed under the Fourteenth Amendment.

1

every time he hit the call button.  The officer then proceeded to repeatedly strike Kipp in his cell.  Other officers allegedly observed or joined in the assault and derogatory comments were made about Kipp's sexual preference.  Despite the recommendation of Dr. Lucille Aiken, Kipp was not sent for outside medical assistance until October 15, 2010.  An examination revealed broken bones, a perforated ear drum, facial swelling and numerous other injuries which should have been treated immediately.

As to Warden Rustin, the Amended Complaint conclusorily alleges that he knew of prior attacks by corrections officers against other inmates.  ¶ 35.  No facts are pled regarding Warden Rustin's knowledge of these incidents.  Kipp alleges that Rustin chose to justify or cover-up these incidents instead of enforcing the policy against the excessive use of force or disciplining officers for violations of the policy.  ¶ 35-42.  Kipp reasons that his injuries resulted from Rustin's alleged failure to enforce the policy for earlier attacks against other inmates.  No facts are pled regarding such cover-up.  Similarly, Kipp alleges that Rustin failed to enforce, or to discipline officers for prior violations of, the policy regarding compliance with a doctor's decision to hospitalize an inmate.  Again, no facts are pled in support of this conclusory allegation.

As to Allegheny County and the Allegheny County Bureau of Corrections, the Amended Complaint acknowledges that they had policies prohibiting the use of excessive force and mandating proper medical treatment of inmates.  ¶¶ 34, 43.  Indeed, the Amended Complaint alleges that the corrections officers' conduct violated those policies.  ¶ 36, 47.  The only specific allegation of wrongdoing as to Allegheny County and the Allegheny County Bureau of Corrections is that they attempted to limit the number of inmates sent to outside medical

facilities in an effort to cut costs at the expense of inmate health. ¶ 29, 50. No facts are pled in support of this allegation.

Kipp filed the original Complaint in December 2011. The County, Bureau of Corrections and Rustin promptly filed a motion to dismiss the claims against them, which the Court deemed moot when Kipp filed an Amended Complaint. The Amended Complaint asserts six claims against eight named Defendants: (1) Fourteenth Amendment excessive force, against the County, Bureau of Corrections, Rustin, and corrections officers Metz and Miller; (2) Fourteenth Amendment failure to intervene against the County, Bureau of Corrections, Rustin and corrections officer Williams; (3) Fourteenth Amendment deliberate indifference to excessive force, against the County, Bureau of Corrections and Rustin; (4) Fourteenth Amendment deliberate indifference to medical needs against the County, Bureau of Corrections and Rustin; (5) assault and battery against corrections officers Metz and Miller; and (6) intentional infliction of emotional distress ("IIED") against all Defendants. Kipp also seeks punitive damages against the individual Defendants.

The County, Bureau of Corrections and Rustin have renewed their motion to dismiss. Because the allegations against them in the Amended Complaint are essentially unchanged and do not overcome the alleged flaws identified in their original motion to dismiss, they ask the Court to dismiss all claims against them with prejudice and to terminate them from the case.

**Standard of Review**

Counsel for Kipp has mis-stated the applicable standard of review. The "any set of facts" standard described initially in *Conley v. Gibson*, 355 U.S. 41 (1957), and incorporated into the cases cited by Kipp, has "earned its retirement" and "is best forgotten." *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 554, 563 (2007).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiently of the complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a ***plausible*** claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (emphasis added).

Thus, after *Iqbal*, a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id.* at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* at 211 (citing *Iqbal* 129 S. Ct. at 1949). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal* 129 S. Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 210 (quoting *Iqbal*, 129 S. Ct. at 1948).

However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the requirements of Fed. R. Civ. P. 8 must still be met. *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations omitted). Fed. R. Civ. P. 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Additionally, the Supreme Court did not abolish the Fed. R. Civ. P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231(citing *Twombly,* 550 U.S. at 553).

In *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010) (involving § 1983 claims against supervisory officers and municipality), the Court of Appeals for the Third Circuit described a three-step approach: (1) recitation of the elements of a prima facie case; (2) identification of conclusory allegations that are not entitled to an assumption of truth; and (3) determination of whether the well-pleaded factual allegations plausibly give rise to an entitlement for relief." *Id*. at 130.

Legal Analysis

As an initial matter, Defendants represent that the "Allegheny County Bureau of Corrections" is a sub-unit of Allegheny County. It has no separate corporate identity and, therefore, lacks the capacity to be sued. Kipp agrees to dismissal of the "Allegheny County Bureau of Corrections" as a party.[2]

As another preliminary matter, Allegheny County contends that it is entitled to governmental immunity as to Count 6 (the IIED claim) pursuant to the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541 et seq. Kipp agrees to dismissal of Count 6 as to Allegheny County, although he maintains that Warden Ruskin is not entitled to such immunity in his personal capacity.

Turning now to contested issues, the County and Warden Rustin contend that the Amended Complaint has failed to allege a valid claim for supervisory or municipal liability under Section 1983 in Counts 1 through 4. Warden Rustin further contends that he is entitled to qualified immunity and is not liable for IIED. Kipp contends that the Amended Complaint has stated valid claims.

A. Claims Against Warden Rustin

It is well-established that supervisors cannot be held liable under Section 1983 for constitutional violations committed by their subordinates under the doctrine of respondeat superior. *Iqbal*, 129 S. Ct. at 1948. There are two cognizable theories of supervisory liability, however: (1) as a policymaker, if the supervisor "established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; and (2) if the supervisor personally

---

[2] Defendants contend that claims against Warden Rustin in his official capacity are similarly duplicative of claims against the County. Kipp represents that Warden Rustin has been sued only in his personal capacity.

"participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). A plaintiff must also allege a plausible nexus or affirmative link to demonstrate a causal connection between the supervisor's direction and the violation. *Id*.

The Amended Complaint fails to allege any facts to support a claim against Warden Rustin. It appears that Kipp is pursuing the "policymaker" theory of liability, in that he alleges that Rustin was deliberately indifferent to inmate safety because he "failed to adopt a practice of disciplining officers for violations of the use of force policy." Amended Complaint ¶ 37-38. The Amended Complaint asserts that Rustin adopted a similar "failure to discipline" policy with respect to violations of the medical treatment policy. Amended Complaint ¶ 48. However, there are no actual "facts" pled in support of either allegation. Rather, the Amended Complaint merely contains bald legal conclusions that Rustin established these "failure to discipline" policies, was aware of the risks to prisoners, and that the attack on Kipp and delay in medical treatment resulted from the policies. Amended Complaint ¶¶ 39-41; 49-51.

As explained in *Santiago,* the United States Supreme Court has ruled that such formulaic recitations of the elements of a claim will not suffice:

> The Court disregarded allegations that "petitioners knew of, condoned, and willfully and maliciously agreed to subject [respondent] to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin" and that "Ashcroft was the principal architect of this invidious policy, and that Mueller was instrumental in adopting and executing it." *Id*. (internal quotation marks omitted). The Supreme Court called those allegations "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim." *Id*. (internal quotation marks omitted). The Court emphasized that the claims required dismissal not because they were fanciful, but because they were conclusory. *Id*. Likewise, in this case where Santiago is required to prove that the Supervising Officers directed others to use excessive force, an allegation that the plan "specifically sought" that use of force is nothing

7

> more than a formulaic recitation of the elements of a supervisory liability claim and hence is not entitled to the assumption of truth. The same is true for Santiago's allegation that Lt. Springfield "permitted the use of excessive force," which is nothing more than a conclusory statement that he acquiesced in his subordinates' violations.

629 F.3d at 131-32.  The allegations against Warden Rustin are similarly conclusory and formulaic.  Accordingly, Kipp has not pled a cognizable "policy" claim against Rustin.

The "personal participation" theory of Section 1983 liability is equally flawed.  Rustin is not alleged to have had any personal participation in, or prior knowledge of, the incident involving Kipp.  There are no facts to support a claim that Rustin directed the attack or acquiesced in the attack.  As pled, the attack seems to have been an impromptu response to Kipp's use of the call button, rather than an organized, premeditated scheme.  The Amended Complaint alleges that Metz entered the cell and struck Kipp, that officer Miller joined the assault, and that officer Williams stood watch at the cell door and failed to intervene.  ¶¶ 16-23.  No similar allegations are made as to Rustin.  Indeed, it is not apparent whether Rustin was even in the jail during the alleged assault on Kipp. At most, the Amended Complaint alleges that Rustin knew of prior attacks by unnamed corrections officers against <u>other</u> inmates.  Amended Complaint ¶ 35.  This will not suffice.  Accordingly, a plausible "personal participation" theory has not been pled as to Warden Rustin.  Thus, the Section 1983 claims against Rustin must be dismissed.

A claim for intentional infliction of emotional distress ("IIED") in Pennsylvania has four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979). The lack of factual allegations regarding Warden Rustin's participation in the alleged assault on Kipp is fatal to the

claim of intentional infliction of emotion distress in Count 6 of the Amended Complaint. There are simply no facts pled as to any extreme or outrageous conduct by Rustin.

In summary, the Amended Complaint fails to state any valid claims against Warden Rustin.[3] Accordingly, he will be dismissed as a party.

### B. Claims Against Allegheny County

Municipal liability under Section 1983 cannot be based on respondeat superior. In *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that a "municipality is only liable when the plaintiff can show that the municipality itself, by implementing a municipal policy, regulation or decision either formally adopted or informally adopted through custom, actually caused the alleged constitutional transgression." *Id*. at 691. "A policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict, [and a] custom is an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). In addition, a plaintiff must show that the municipality has acted with "deliberate indifference" to the plaintiff's constitutional rights. *Simmons v. City of Philadelphia*, 947 F.2d 1047, 1059 (3d Cir. 1991). Mere negligence is not enough. Finally, the plaintiff must show that the municipality was the "moving force" behind the injury alleged. *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000).

In this case, Kipp pleads that the County, in fact, had appropriate policies to prevent the use of excessive force and to provide appropriate medical care.[4] Amended Complaint ¶¶ 34, 43.

---

[3] The Court need not reach Rustin's defense of qualified immunity.

Indeed, the gravamen of Kipp's claims against the corrections officers is that they violated the County policies. Amended Complaint ¶¶ 29, 36, 47. The Amended Complaint alleges that the County was aware of prior attacks by corrections officers on inmates; that the County attempted to save money by minimizing outside medical care; and that it failed to discipline officers for violating the "use of force" and "medical treatment" policies. In his brief, Plaintiff also argues that the County has failed to adequately train its corrections officers. However, these are bald assertions unsupported by any facts.

As explained above, a plaintiff must do more than conclusorily and formulaically recite the elements of a claim. Plaintiffs must plead facts that the County is responsible either for enacting, implementing, or engaging in a widespread practice which constitutes or causes a constitutional violation which plausibly give rise to an entitlement to relief. Kipp's allegations against the County are completely lacking in such facts. The Amended Complaint contains only bald, conclusory allegations as to the County's alleged failure to enforce its policies. Moreover, there are no facts with respect to the County's alleged "deliberate indifference." To the contrary, the Amended Complaint affirmatively pleads, on its face, that the County has adopted appropriate policies to protect against the harms allegedly suffered by Kipp.

In summary, the Amended Complaint fails to plead any cognizable claims against Allegheny County. Therefore, it will be dismissed as a party.

An appropriate Order follows.

McVerry, J.

---

[4] The Amended Complaint ¶ 7 avers that medical treatment is provided by another of the named Defendants, Allegheny Correctional Health Services, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID KIPP**, <br> **Plaintiff**, <br> <br> v <br> **ALLEGHENY COUNTY, ALLEGHENY COUNTY BUREAU OF CORRECTIONS, ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC., CORRECTIONS OFFICER ARII L. METZ** *individually and in his official capacity as a correctional officer,* **CORRECTIONS OFFICER TIMOTHY MILLER** *individually and in his official capacity as a correctional officer,* **CORRECTIONS OFFICER MARCIA L. WILLIAMS** *individually and in her official capacity as a correctional officer,* **RAMON C. RUSTIN** *individually and in his official capacity as warden of the Allegheny County Jail* **and DANA PHILLIPS** *individually and in her official capacity as President and chief operating officer of Allegheny Correctional Health Services, Inc.* <br> **Defendants.** | 2:11-cv-1553 |

## ORDER OF COURT

AND NOW, this 27th day of April, 2012, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the the MOTION TO DISMISS (Document No. 22) filed by Allegheny County, Allegheny County Bureau of Corrections and Warden Ramon C. Rustin is **GRANTED** and those Defendants are DISMISSED from this case with prejudice.

Accordingly, the caption is amended as follows:

| | |
|---|---|
| **DAVID KIPP,** <br>      **Plaintiff,** <br><br>      v <br> **ALLEGHENY CORRECTIONAL HEALTH SERVICES, INC.**, **CORRECTIONS OFFICER ARII L. METZ** *individually and in his official capacity as a correctional officer,* **CORRECTIONS OFFICER TIMOTHY MILLER** *individually and in his official capacity as a correctional officer,* **CORRECTIONS OFFICER MARCIA L. WILLIAMS** *individually and in her official capacity as a correctional officer,* **and DANA PHILLIPS** *individually and in her official capacity as President and chief operating officer of Allegheny Correctional Health Services, Inc.* <br>      **Defendants.** | ) <br> ) <br> ) <br> )  **2:11-cv-1553** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

                BY THE COURT:

                <u>s/Terrence F. McVerry</u>
                United States District Judge


cc: **Patrick W. Murray, Esquire**
   Email: pmurray24@hotmail.com
   Craig E. Maravich
   Email: cmaravich@county.allegheny.pa.us
   Stanley A. Winikoff
   Email: swinikoff@winikofflaw.com